**IN THE UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF ARKANSAS**
**CENTRAL DIVISION**

JERRY MCKEE                                                                              PETITIONER
ADC #174370

v.                                              4:21-cv-00910-KGB-JJV

DEXTER PAYNE, Director,
Arkansas Division of Correction                                              RESPONDENT

**PROPOSED FINDINGS AND RECOMMENDATIONS**

**INSTRUCTIONS**

The following recommended disposition has been sent to United States District Judge

Kristine G. Baker.  Any party may serve and file written objections to this recommendation.

Objections should be specific and should include the factual or legal basis for the objection.  If

the objection is to a factual finding, specifically identify that finding and the evidence that supports

your objection.  An original and one copy of your objections must be received in the office of the

United States District Court Clerk no later than fourteen (14) days from the date of the findings

and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely

objections may result in waiver of the right to appeal questions of fact.

**DISPOSITION**

**I.      BACKGROUND**

Petitioner Jerry McKee, an inmate at the Varner Unit of the Arkansas Division of

Correction, brings this 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus and Addendum to

Petition for Writ of Habeas Corpus.  (Doc. Nos. 1, 9).  On September 11, 2019, Mr. McKee was

convicted by a jury in Greene County, Arkansas, of rape, and was sentenced to life in prison.

(Doc. No. 10-5 at 85-87); *McKee v. State*, 2020 Ark. 327, at 5, 608 S.W.3d 584, 589.  The

Arkansas Supreme Court later described the evidence in the case as follows:

> At trial, the first witness for the State was Lieutenant Rhonda Thomas of the Paragould Police Department. Thomas testified that she works child-abuse cases. Thomas stated that on August 3, 2018, she received a report involving McKee and a minor, C.T. C.T. was then brought to the police department for an interview. After the interview, Thomas sent two detectives to arrest McKee. She was then advised that the detectives were in a standoff with McKee outside his residence; McKee was brandishing a knife and threatening to hurt himself. After the standoff was quelled, McKee voluntarily submitted to an interview with police.
>
> The recording of McKee's interview with Thomas was then played for the jury. McKee told police that C.T. had been staying at his house for approximately two months and that C.T. refers to McKee as her uncle. McKee stated that he had taken C.T. to the doctor earlier that day. When the interviewer asked why McKee had taken C.T. to the doctor, he stated: "It was last weekend when I hurt her. (Inaudible) bled a lot, so I figured I'd busted her cherry or whatever you want to call it." When asked how C.T.'s injury occurred, McKee stated, "We was wrestling." When asked where this occurred, McKee stated, "At home, in my bedroom.... She slept in the bed with me because that's where the air conditioner was." When asked what C.T. was wearing at the time, McKee stated, "I ain't for sure. She might have been naked, I ain't for sure.... Because even with the air conditioner in there, the house ain't very cool."
>
> When investigators told McKee that C.T. had alleged he put his private part in her private part, McKee denied the allegation. McKee maintained that his private part wouldn't get hard at this point in his life. He said that he and C.T. were "wrestling," that they were both "naked," and that he "got out of the way" when C.T. said she had to pee. McKee said that C.T. was bleeding a lot at this point. For the next few days, McKee gave C.T. feminine hygiene pads, until taking C.T. to the doctor, which is when the initial report to police was made.
>
> After the conclusion of McKee's recorded interview, Lieutenant Thomas added that C.T. was admitted to Arkansas Children's Hospital for her injuries, which were extensive.
>
> The next witness for the State was Tron Beesley, who also worked in the Paragould Police Department. Beesley was one of the officers Lieutenant Thomas sent to arrest McKee. Beesley testified that upon making contact with McKee outside his residence, McKee drew a knife and held it to his neck. McKee stated that he took C.T. to the doctor because C.T. had gotten hurt while they were wrestling, and C.T.'s injury was getting infected. The standoff de-escalated, and McKee submitted to the officers. The officers searched McKee's home. Officers logged several items from the search, including feminine hygiene products, pads, pornographic DVDs, a sex toy, sheets, panties, towels, and a mattress stained with what Beesley believed was blood. The officers also found what Beesley described as "booby trap[s]"

inside the home, but it is not clear if any were operational.

The next witness to testify was C.T. C.T. testified that she knew the difference between good touches and bad touches and that McKee had touched her in a bad way. C.T. was provided a doll with which she could demonstrate. C.T. stated that McKee was behind her and pulled down her panties. She said, "He put his middle in my middle," and, "It was his private to my private." She said she told him to stop, that it hurt, and that she continued to bleed in the days afterward. She said she was then taken to the hospital where she had to have surgery.

The next witness to testify for the State was Lanie Haley, who worked for Paragould Pediatrics. Haley testified that C.T. and McKee came to her office and that the reason for the visit was bleeding from C.T.'s vaginal area. It had been a week since the injury. McKee told Haley that the injury occurred while he and C.T. were wrestling. Haley said this was a red flag to her because this would have been the first time an injury as significant as C.T.'s would have come from wrestling. Haley felt the injury was the result of abuse and made a report to police.

The next witnesses to testify for the State were Phillip Raines and Colton Waters of the Arkansas State Crime Lab. Their testimony provided that DNA from C.T. was found on the sex toy recovered from McKee's residence.

The next witness to testify for the State was Dr. Clingenpeel, a child-abuse pediatrician. She testified that she supervises the nurse who examined C.T. at Arkansas Children's Hospital and that she reviewed the examination on video. She explained that C.T. had severe and extensive lacerations to her anogenital tissues, extending from inside her vagina to her anal folds. C.T.'s injury required surgery to repair, and there were signs the injury had already begun to heal by the time C.T. was examined by physicians. This type of injury "would be more typically associated with vaginal childbirth, although that cause would not be physiologically possible in this patient," she concluded. Instead, "an injury of this magnitude would require" what Dr. Clingenpeel called a "vaginal impalement mechanism."

After Dr. Clingenpeel's testimony, the State rested its case. McKee made a motion for a directed verdict, which was denied, and renewed his motion for directed verdict at the close of all evidence, which was also denied.

*McKee*, 2020 Ark. 327, at 1-5, 608 S.W.3d at 587-89.

In April 2020, Mr. McKee appealed to the Supreme Court of Arkansas.[1]  (Doc. 10-3).   He

---

[1]  In January 2019, while Mr. McKee was incarcerated pending trial, he filed a 28 U.S.C. § 2254 Petition for Writ of Habeas Corpus asking this Court to stay his state criminal case.  *See McKee v. Kelley*, No. 4:19-cv-00075-KGB-JJV, 2019 WL 3824186, at *1 (E.D. Ark. Aug. 15, 2019).

claimed:   (1) the State failed to put on substantial evidence of deviate sexual activity or sexual intercourse; (2) the circuit court "committed reversible error" in excluding evidence of the victim's prior sexual abuse under Ark Code Ann. § 16-42-101, the "rape shield" statute; (3) the circuit court erred in sustaining a hearsay objection regarding C.T.'s alleged prior injury; (4) the circuit court erred in denying Mr. McKee's motion to suppress the video evidence of his arrest; (5) the circuit court clearly erred by denying Mr. McKee's motion to impeach C.T. with evidence of prior sexual abuse; and (6) the circuit court abused its discretion by allowing the State to ask the child victim leading questions.   (*Id.* at 39); *see McKee*, 2020 Ark. 327, at 5-19, 608 S.W.3d at 589-95.   The Arkansas Supreme Court affirmed Mr. McKee's rape conviction and sentence.   *McKee*, 2020 Ark. 327, at 19, 608 S.W.3d at 596.   Mr. McKee did not file a petition for post-conviction relief pursuant to Arkansas Rule of Criminal Procedure 37.1.

In addition to his Petition of Writ of Habeas Corpus now before the Court, Mr. McKee provides a table of contents (Doc. No. 2 at 4) and an Addendum.   (Doc. No. 9).   After reading all three documents in full, Mr. McKee seems to be making the following claims:   (1) he was entitled to represent himself on direct appeal; (2) ineffective assistance of counsel generally from comments his trial attorney made throughout his representation; (3) actual innocence; (4) futility of state court review; (5) ineffective assistance of counsel for failing to consult with or use expert witnesses; (6) video evidence and the trial transcript was fabricated, altered, and redacted; (7) there was an improper comment by defense counsel and a jury instruction regarding his choice not to testify at trial; (8) excessive pre-trial bond; (9) prosecutorial misconduct through "*Brady*

---

Judgment was entered on August 15, 2019, finding Mr. McKee did not fit the basic requirements for *habeas* relief under 28 U.S.C. § 2254 and accordingly, the Court should abstain from considering the instant federal claims pursuant to *Younger v. Harris*, 401 U.S. 37 (1971).   *Id.* Further, Mr. McKee had not exhausted state court remedies.   *Id.*

violations"[2] and leading the witness; (10) ineffective assistance of counsel for not calling any defense witnesses to testify; and (11) a violation of his right to a public trial.[3]   (*See* Doc. No. 1 at 3-9; 12-20; 41-42; 49-52; 90).

Respondent contents that all Mr. McKee's claims are either procedurally defaulted, meritless, or the state court's adjudication of the claims is due deference.   (Doc. No. 10 at 6). After careful consideration of Mr. McKee's Petition, Addendum (Doc. Nos. 1, 9), and the Response (Doc. No. 10), I find the Petition should be dismissed with prejudice.   For organizational purposes, I discuss the claims in groups by reason of dismissal.

II.     ANALYSIS

A. Procedural Default

Most all of Mr. McKee's claims are inexcusably procedurally defaulted.   Mr. McKee makes three separate ineffective assistance of counsel arguments, and asserts futility, stating "I can not get relief under Rule 37 for challenging counsels judgment."   (Doc. Nos. 1 at 45; 9 at 4).   In addition to his ineffective assistance of counsel claims, Mr. McKee also asserts for the first time the following arguments:   (1) video evidence and the trial transcript was fabricated, altered, and redacted; (2) there were improper comments made about his choice not to testify; (3) excessive pre-trial bond; (4) prosecutorial misconduct; and (5) his right to a public trial was violated.

Before filing a federal habeas petition, a state inmate must first "fairly present" the substance of his or her federal habeas claims to the appropriate state courts and exhaust all

---

[2] *Brady v. Maryland*, 373 U.S. 83 (1963).

[3] Mr. McKee also submitted within his Petition a motion for an extension of time to file a reply, addressed to the United States Supreme Court.   (Doc. No. 1 at 106).   Respondent contends that Mr. McKee failed to state grounds for relief and the motion was premature when submitted. (Doc. No. 10 at 16).   Following the filing of Respondent's Response, Mr. McKee submitted a motion for status, in which he requested time to file a reply.   (Doc. No. 12).   The Court allowed Mr. McKee until 12/10/2021 to file a reply but he did not do so.   (Doc. No. 13).

available state remedies.   *Murphy v. King*, 652 F.3d 845, 848-49 (8th Cir. 2011) (citing *Baldwin v. Reese*, 541 U.S. 27, 29 (2004); 28 U.S.C. § 2254(b)(1) ("An application for a writ of habeas corpus . . . shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State")).   The fair-presentment requirement exists so that the respective state has the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."   *Murphy*, 652 F.3d at 849 (quoting *Duncan v. Henry*, 513 U.S. 364, 365 (1995)); *see also Picard v. Connor,* 404 U.S. 270, 275 (1971) (quoting *Darr v. Burford*, 339 U.S. 200, 204 (1950)) ("We have consistently adhered to this federal policy, for 'it would be unseemly in our dual system of government for a federal district court to upset a state court conviction without an opportunity to the state courts to correct a constitutional violation.'"); *Lenza v. Wyrick*, 665 F.2d 804, 807-08 (8th Cir. 1981).   In order to fairly present a federal claim to the state courts, the petitioner must have referred to "'a specific federal constitutional right, a particular constitutional provision, a federal constitutional case, or a state case raising a pertinent federal constitutional issue' in a claim before the state courts."   *Murphy*, 652 F.3d at 849.

When a state inmate fails to comply with the fair-presentment requirement, his or her claim will be procedurally defaulted.   *Id.*   Moreover, if it would be futile for a petitioner to return to the state courts to present his or her claim, "the exhaustion requirement in § 2254(b) is satisfied, but th[is] failure to exhaust 'provides an independent and adequate state-law ground for the conviction and sentence, and thus prevents federal habeas corpus review of the defaulted claim.'"   *Armstrong v. Iowa*, 418 F.3d 924, 926 (8th Cir. 2005) (quoting *Gray v. Netherland*, 518 U.S. 152, 162 (1996)). When a state prisoner has defaulted his or her federal claims in state court, federal habeas review of the claims is barred unless the prisoner can demonstrate:   (1) "cause for the default and actual prejudice as a result of the alleged violation of federal law"; or (2) "that failure to consider the

claims will result in a fundamental miscarriage of justice," that is, a constitutional violation has resulted in the conviction and continued incarceration of one who is actually innocent. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### 1. Ineffective Assistance of Counsel and Futility

Mr. McKee makes three separate ineffective assistance of counsel claims throughout his Petition. First, Mr. McKee alleges his trial counsel was ineffective in a section titled "Attorney ineffective/deficient/denial" which lists "things the state owned attorney, Scurlock, would say or ask about anytime he came around." (Doc Nos. 1 at 8; 9 at 4). Mr. McKee later argues his counsel was also ineffective for lack of expert witnesses in a section titled, "Paying for Indigents Defense." (Doc. No. 1 at 49). Last, Mr. McKee's section, "No Witnesses for Defense," asserts ineffective assistance of counsel for not having any defense witnesses testify. (*Id.* at 90). Mr. McKee failed to raise his ineffective-assistance-of-counsel claims in state court in a petition pursuant to Rule 37, "which is the remedy for asserting allegations of ineffective assistance of counsel." *Gray v. State of Arkansas*, 2018 Ark. 79, at 3, 540 S.W.3d 658, 659 (citing *State of Arkansas v. Tejeda-Acosta*, 2013 Ark. 217, at 8-9, 427 S.W.3d 673, 678 (a Rule 37 petition is the proper remedy "[w]here one who pleads guilty desires to challenge a plea after entry of judgment," and the time limitations imposed in Rule 37 are "jurisdictional in nature")). And the time to do so has expired. Under Rule 37.2(c)(ii), Mr. McKee had until sixty days after the appellate court's mandate was issued to pursue post-conviction relief, which means an attempt to return to state court and present the claim now would be futile. (Doc. No. 10-2). Therefore, federal habeas review is barred unless Mr. McKee can demonstrate an exception. *Armstrong*, 418 F.3d at 926.

The cause-and-prejudice exception requires a showing of "some objective factor external to the defense" that impeded development of the claim in state court. *Murray v. Carrier*, 477 U.S.

478, 488 (1986).   Mr. McKee does not identify any such impediment.   He states:

> I can not prove how counsel was ineffective at trial or direct appeal. . . . I can not
> get relief under Rule 37 for challenging counsels judgement. . . . All of the above
> two pages seem to be saying I can not challenge anything in a Rule 37 proceeding
> and since the Ark. Supreme Court has denied letting me help defend or defend
> myself I can not exhaust my claims in a state court. So it seems to be futile to even
> fight my case in the Arkansas Courts.

(Doc. No. 1 at 45-46).

Mr. McKee seems to be making the argument that the denial of his motion for self-representation on direct appeal precluded him from filing a Rule 37 petition.   However, the adverse ruling had no effect on his ability to file a Rule 37 petition nor does it excuse his ineffective assistance of counsel claims' default.

The miscarriage-of-justice exception is likewise inapplicable.   A petitioner who raises a gateway claim of actual innocence must establish (1) new and reliable evidence that was not presented at trial, and (2) in light of the new evidence, it is more likely than not that no reasonable juror would have convicted him.   *Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997).   Discussed later in more detail, Mr. McKee does not begin to cross the very high threshold of an actual-innocence gateway claim.

Finally, the *Martinez* exception for substantial claims of ineffective assistance of trial counsel, which allows federal habeas review where there was no counsel or ineffective counsel in the initial-review collateral proceeding, is also unavailable.   *Martinez v. Ryan*, 566 U.S. 1 (2012); *Sasser v. Hobbs*, 735 F.3d 833, 852-53 (8th Cir. 2013) (*Martinez* applicable in Arkansas cases because Arkansas does not generally afford defendants meaningful review of ineffective-assistance-of-trial-counsel claims on direct appeal).   *Martinez* has been held to be inapplicable when there was no initial-review collateral proceeding at all.   *See Bell v. Kelley*, 5:17-cv-00234-SWW-JTR, 2018 WL 3653317, at 6 (E.D. Ark. June 29, 2018) (recommended decision)

("[B]ecause Bell failed to file a timely Rule 37 Petition, *Martinez* does not apply to his ineffective assistance claim."), *report and recommendation adopted* 2018 WL 3650228 (E.D. Ark. Aug. 1, 2018); *see also Jones v. Pa. Bd. of Prob. & Parole*, 492 Fed. Appx. 242, 246-47 (3d Cir. 2012) ("Because the Court spoke only of applying its exception to an 'initial-review collateral proceeding, if undertaken without counsel or with ineffective counsel[,]' we conclude that the *Martinez* analysis is inapplicable where the criminal defendant did not initiate any state collateral review proceeding whatsoever.").   Thus, even assuming Mr. McKee were raising substantial claims of ineffective assistance of counsel, his failure to first raise them in a properly filed Rule 37 petition precludes application of *Martinez*.   Because no exception applies, all of Mr. McKee's ineffective assistance of counsel claims are inexcusably procedurally defaulted.

### 2. Fabricated Evidence, Choice not to Testify, Pre-Trial Bond, Prosecutorial Misconduct, Public Trial

Mr. McKee raises several other claims for the first time in his Petition.   In his table of contents, he includes the section "Redact/Alter/Fabricate," which argues that the interrogation videos shown at trial had been altered and the trial transcript reflects the trial incorrectly.   (Doc. No. 1 at 57-60).   His section titled, "Defendant Not Testifying," Mr. McKee asserts his trial attorney prejudicially told the jury "my client intends to exercise his constitutional right not to testify," which was followed by a "not testifying instruction" from the judge.   (*Id.* at 63).   Mr. McKee's "Bond" section asserts his pre-trial bond was set too high.   (*Id.* at 66).   His "Prosecutorial Misconduct" section asserts his "state owned attorney" and the prosecutor conspired together for a *Brady*[4] violation, and that the prosecution altered his interrogation, asked

---

[4] *Brady*, 373 U.S. at 83 (holding prosecution must give defense materially exculpable evidence in the government's possession).   However, Mr. McKee argues that the prosecutor gave his own

the child victim leading questions[5], and made "statements in their closing that was not put in as evidence." (*Id.* at 76-79). Mr. McKee also claims in his "Public Trial" portion that his trial was not open to the public, as guaranteed by the United States Constitution. (*Id.* at 95-96). He argues the denial is a structural error resulting in fundamental unfairness. *Id.* Lastly, Mr. McKee makes other assertions throughout his Petition that lack specific headings. (*See e.g., id.* at 9-10 (claiming there were recording devices in the jail and courthouse); at 48 (stating "the [circuit] judge did not follow Ark. R. Crim. P. Rule 9")).

Mr. McKee brought a direct appeal; however, none of the above-described claims were presented to the state court in that appeal. *See McKee*, 2020 Ark. 327, at 5-19, 608 S.W.3d at 589-95. Because Mr. McKee did not "fairly present" his federal habeas claims to the appropriate state courts, federal habeas review is barred unless he can demonstrate an exception. *Armstrong*, 418 F.3d at 926. Regardless, Mr. McKee's pretrial bond argument is moot once he was convicted and is not cognizable in habeas proceedings. *Murpy v. Hunt*, 455 U.S. 478, 481 (1982). Specifically, in regard to his right to a public trial claim, it is true that certain structural errors do mandate automatic reversal. *See Arizona v. Fulminante*, 499 U.S. 279, 310 (1991) (listing right to a public trial as one of the structural errors requiring reversal). However, such an error does not automatically bypass a state-law procedural default and therefore, is also barred without an exception. *Hatcher v. Hopkins*, 256 F.3d 761, 764 (8th Cir. 2001) (discussing federal courts may

---

defense attorney evidence, who then withheld it from Mr. McKee. (Doc. No. 1 at 78-79). Under a different heading, Mr. McKee claims another *Brady* violation occurred from withholding his real interrogation video, because the one shown at trial was not of him. (*Id.* at 36).

[5] Mr. McKee asserts the prosecutors asked leading questions in many sections throughout his Petition. (*See e.g.,* Doc. No. 1 at 19, 38, 79). Mr. McKee brought a similar claim on direct appeal, alleging the circuit court's error in allowing the leading. *McKee*, 2020 Ark. 327, at 18, 608 S.W.3d at 595. Thus, the "leading questions" portion of Mr. McKee's argument is not procedurally barred and discussed below.

not review structural errors that were procedurally defaulted outside an exception recited in *Coleman*, 501 U.S. 722 (1991)).

Again, the cause-and-prejudice exception does not apply because Mr. McKee does not identify "some objective factor external to the defense" that impeded development of the claims in state court.   (Doc. No. 1 at 45-46); *Murray*, 477 U.S. at 488.   Moreover, the miscarriage-of-justice exception does not apply for reasons previously stated.   Last, the *Martinez* exception is not applicable because it only applies to certain substantial claims of ineffective assistance of trial counsel.   *Martinez*, 566 U.S. 1; *Sasser*, 735 F.3d at 852-53.

## B. Actual Innocence

Mr. McKee has failed to state a viable actual innocence claim.   It is well settled that a freestanding claim of actual innocence is not cognizable in habeas:   "Claims of actual innocence based on newly discovered evidence have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding."   *Herrera v. Collins*, 506 U.S. 390, 400 (1993); *see also Burton v. Dormire*, 295 F.3d 839, 848 (8th Cir. 2002) ("[W]e have squarely rejected the notion that a prisoner may receive a writ simply because he claims he is innocent.").

To the extent Mr. McKee raises a claim of actual innocence as a "gateway" claim to pass through procedural bar, this claim also fails.   A gateway claim is "a credible showing of actual innocence [that] may allow a prisoner to pursue his constitutional claims . . . on the merits notwithstanding the existence of a procedural bar to relief."   *McQuiggin v. Perkins*, 569 U.S. 383, 392 (2013).   This rule, also known as the fundamental miscarriage-of-justice exception, "is grounded in the 'equitable discretion' of habeas courts to see that federal constitutional errors do not result in the incarceration of innocent persons."   *Id*. (quoting *Herrera*, 506 U.S. at 404).   But

the United States Supreme Court has characterized tenable actual-innocence gateway pleas as "rare." *Id*. at 386.   A petitioner who raises a gateway claim of actual innocence must establish (1) new and reliable evidence that was not presented at trial, and (2) in light of the new evidence, it is more likely than not that no reasonable juror would have convicted him.   *Weeks v. Bowersox*, 119 F.3d 1342, 1351 (8th Cir. 1997).   Evidence is "new" if it was not available at the time of trial through the exercise of due diligence.   *Nooner v. Hobbs,* 689 F.3d 921, 934 (8th Cir. 2012).   This standard is "demanding" and seldom met.   *McQuiggin*, 569 U.S. at 386 (quoting *House v. Bell*, 547 U.S. 518, 538 (2006)).   Additionally, to establish a claim of actual innocence, the petitioner must show factual innocence, not simply legal insufficiency of the evidence to support a conviction.   *McNeal v. United States*, 249 F.3d 747, 749 (8th Cir. 2001).

Mr. McKee fails to present any new evidence or make any convincing argument, but instead reiterates the "wrestling defense" he employed at trial.   (*See* Doc. No. 1 at 33-39).   Therefore, he does not come close to meeting the gateway standard, much less the "extraordinarily high" standard applicable to a freestanding claim.   *Herrera*, 506 U.S. at 417.

### C. Deferential Review

Mr. McKee's remaining claims fail to defeat the highly deferential standard given to the state court's reasonable ruling.   In the interests of finality and federalism, federal habeas courts, under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), are restricted to a "limited and deferential review of underlying state court decisions."   *Sera v. Norris*, 400 F.3d 538, 542 (8th Cir. 2005); *Ryan v. Clarke*, 387 F.3d 785, 790 (8th Cir. 2004).   Under this statute, federal review of underlying state court decisions is limited because federal courts may only grant habeas relief if the claim was adjudicated on the merits in the state court proceeding and the state court's decision:

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.

28 U.S.C. § 2254(d); *see also Rompilla v. Beard*, 545 U.S. 374, 380 (2005).

Under subsection (d)(1), a state court decision is "contrary to" federal law if the state court arrived "at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the United States Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 412-13 (2000); see also *Collier v. Norris*, 485 F.3d 415, 421 (8th Cir. 2007). A decision involves an unreasonable application of federal law when the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Williams*, 529 U.S. at 413. Under subsection (d)(2), a state court decision will be based on an "unreasonable determination of the facts in light of the evidence presented . . . only if it is shown by clear and convincing evidence that the state court's presumptively correct factual findings do not enjoy support in the record." *Lomholt v. Iowa*, 327 F.3d 748, 752 (8th Cir. 2003).

### 1. Self-Representation on Direct Appeal

Mr. McKee's section titled, "Federal Habeas Corpus against Arkansas Supreme Court," corresponds with his claim that the Arkansas Supreme Court should have allowed him to represent himself pro-se on direct appeal. (Doc. Nos. 1 at 2, 9 at 4). Mr. McKee made a similar argument to the Arkansas Supreme Court in his "Motion to Dismiss Appointed Attorneys and Proceed with Pro se Appeal or Vacate Sentence." (Doc. No. 10-7). Mr. McKee has not shown the Arkansas Supreme Court's holding was contrary to, or involved an unreasonable application of, clearly established federal law, nor has he shown it was based on an unreasonable determination of the

13

facts.

In his motion to dismiss, Mr. McKee asserted the Arkansas Constitution supported his request to defend himself.   (Doc. No. 10-7 at 1).   The State responded to Mr. McKee's motion to dismiss, requesting the motion be denied because he was not entitled to self-representation on direct appeal.   (Doc. No. 10-8 at 1-2) (*citing Martinez v. Court of Appeal of California, Fourth Appellate Dist.*, 528 U.S. 152, 163 (2000) (holding criminal defendants have no federal constitutional right to represent themselves on direct appeal from a criminal conviction but courts may exercise their discretion in allowing pro se representation); *Fudge v. State*, 341 Ark. 652, 652-53, 19 S.W.3d 22, 23 (2000) (holding defendant was not entitled to proceed pro se on direct appeal of conviction)).   The Arkansas Supreme Court denied Mr. McKee's motion on October 8, 2020. (Doc. No. 10-9).

In his Petition, Mr. McKee claims *Faretta v. California*, 422 U.S. 806 (1975), also allows him to represent himself and entitles him a hearing on the matter.   (Doc. No. 1 at 2-3).   However, *Faretta* concerns pro se representation at the trial court level, and the United States Supreme Court addressed this important nuance in its *Martinez* opinion.   The Supreme Court stated:

> As the *Faretta* opinion recognized, the right to self-representation is not absolute. . . .   Even at the trial level, therefore, the government's interest in ensuring the integrity and efficiency of the trial at times outweighs the defendant's interest in acting as his own lawyer.
>
> In the appellate context, the balance between the two competing interests surely tips in favor of the State.   Then status of the accused defendant, who retains a presumption of innocence throughout the trial process, changes dramatically when a jury returns a guilty verdict. We have recognized this shifting focus and noted: "[T]here are significant differences between the trial and appellate stages of a criminal proceeding. . ." In the words of the *Faretta* majority, appellate proceedings are simply not a case of "hal[ing] a person into its criminal courts." 422 U.S., at 807, 95 S.Ct. 2525.

*Martinez*, 528 U.S. at 161-63.

As a matter of federal law, I am required to apply a deferential analysis to those claims fully adjudicated in state court, as is the case here.   *Davis v. Grandlienard*, 828 F.3d 658, 664 (8th Cir. 2016).   After reviewing the decision of the Arkansas Supreme Court, I find it is not contrary to, nor an unreasonable application of, an established federal law.   Furthermore, the opinion was not based on an unreasonable determination of the facts.   The Arkansas Supreme Court addressed Mr. McKee's motion and it was denied.   Therefore, based upon the deference given to the state court, the relief Mr. McKee seeks cannot be granted.

### 2.  Prosecutorial Misconduct—Leading Questions

Mr. McKee does not specifically list "leading the witness" in his table of contents outlining his claims.   (Doc. No. 9 at 4).   Instead, he asserts that prosecutors led the child victim, C.T., during her direct examination under his "Prosecutorial Misconduct" section and other places throughout his Petition.   (*See e.g.,* Doc. No. 1 at 19, 38, 79).   Mr. McKee made essentially the same claim in his direct appeal.   (Doc. No. 10-3 at 48).   The Arkansas Supreme Court described the questioning as follows:

> At trial, McKee objected to a specific instance when C.T. was holding the doll, and the prosecutor was leading C.T. to elicit her verbal acknowledgement that McKee had pulled her panties down ("So he pulled your panties down, right?"). McKee raised this objection pursuant to his belief that the prosecutor was essentially directing or encouraging C.T. to pull down the panties on the doll and endorse the prosecutor's statement before she had in any way indicated that would be part of her testimony.   At the resulting bench conference, however, the circuit court explained that the prosecutor was copying C.T., not the other way around ("When he said pulling the panties down, she was already doing that."), and overruled McKee's objection.   McKee's attorney acknowledged that it had been hard to see from his vantage point.

*McKee*, 2020 Ark. 327, at *18, 608 S.W.3d at 595.

The Arkansas Supreme Court thoroughly addressed Mr. McKee's leading claim and found it meritless.   In making its decision, the court referenced its precedent in *Jackson v. State*, 290

Ark. 375, 720 S.W.2d 282 (1986), holding "leading questions by the prosecution to a child victim in a rape case on direct examination are permissible within the sound discretion of the trial court." *Id.* The court noted that Mr. McKee raised no further objections after the bench conference and found no error. *McKee*, 2020 Ark. 327, at *18, 608 S.W.3d at 595.

Applying the required deferential analysis to Mr. McKee's leading claim, I find the Arkansas Supreme Court's adjudication is not contrary to, nor an unreasonable application of, an established federal law. *Davis v. Grandlienard*, 828 F.3d 658, 664 (8th Cir. 2016). Additionally, the opinion was not based on an unreasonable determination of the facts. Therefore, the relief Mr. McKee seeks cannot be granted and his Petition should be dismissed with prejudice.

## III.   CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts, a district court "must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). I find no issue on which Mr. McKee has made a substantial showing of the denial of a constitutional right. Accordingly, no certificate of appealability should issue.

## IV.   CONCLUSION

IT IS, THEREFORE, RECOMMENDED that:

1.   Mr. McKee's § 2254 Petition for Writ of Habeas Corpus (Doc. No. 1) be DISMISSED with prejudice.

2.   A certificate of appealability not be issued.

DATED this 13th day of December 2021.

JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE